TRI-STATE REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17256. Promulgated February 14, 1949.

*Robert A. Littleton, Esq.,* for the petitioner.
*F. S. Gettle, Esq.,* for the respondent.

OPINION.

HILL, *Judge*: The question we have to decide is whether the credit balances in the open account on petitioner's books headed "W. H. Johnson—Account No. 422," in the respective amounts of $83,444.25, $109,757.40, and $112,000, represented loans or represented paid-in surplus for the years 1940 and 1941 and for that part of 1942 prior to April 18, 1942. Respondent contends that these credit balances represented loans and, therefore, did not constitute equity invested capital as defined by section 718 (a) (1) of the Internal Revenue Code.[1] Petitioner, on the other hand, contends that such credit balances represented paid-in surplus and, hence, must be taken into account in determining the amount of equity invested capital. We are convinced from the evidence that respondent's contention must be sustained.

The amounts Johnson advanced to petitioner were carried in its accounts payable ledger as an open account. The facts disclose that the entries in this account were made from petitioner's journal, indicating that petitioner's book of original entry showed that such advances were loans rather than paid-in surplus. The transaction involving the advances to petitioner by its president were consistently treated on its books as loans from 1938 until on or about April 18, 1942.

Petitioner states, however, that the designation of account No. 422 as an account payable of petitioner was in error and that book entries are evidentiary merely and not conclusive, citing *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179, and other cases. Petitioner points to the foreign corporation franchise tax returns filed with the Department of Revenue of the State of Louisiana as well as the Federal tax return filed for the year 1940 as proof of its contention that the credit balances of the W. H. Johnson account really represented equity invested capital. It was required that petitioner include in those tax returns certain balance sheet items which on the state tax returns included an item for paid-in surplus and on the Federal tax return included an item for paid-in or capital surplus. These returns petitioner states "are evidence of *actual* use of said funds as paid-in surplus; and said returns are documentary evidence of the manner in which the corporation regarded the funds as 'paid-in surplus'."

It should be noted, however, that there is a discrepancy between the credit balances shown in the open account and the totals indicated as

[1] SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital.

paid-in surplus in certain of the above mentioned tax returns. The state tax returns, upon which respondent relies principally in support of his contention, show that paid-in surplus as of December 31, 1939 and 1940, was $90,724.16 and $143,047.86, respectively, whereas the credit balances of the open account on those same dates were $83,444.25 and $109,757.40, respectively. The Federal tax return filed in 1940 likewise indicates a paid-in surplus different from the credit balance contained in the open account for the same period. We can not find in the record before us any satisfactory explanation of these discrepancies. The balance sheet attached to the Federal tax return for 1941 is not convincing evidence in support of petitioner's contention, as it was not made out until April 1942, when, so far as the record shows, Johnson first authorized the transfer of the credit balance in the open account involved to paid-in surplus.

We are convinced, not only that the recitals in respect of the character of the advances in question contained in petitioner's state income and Federal income tax returns hereinabove mentioned present insufficient evidence to overcome the presumption of correctness of respondent's determination that the advances in question were merely loans, but also that the entire record of evidence affirmatively establishes that prior to April 18, 1942, such advances were intended by both petitioner and Johnson as loans and not as paid-in surplus.

It is our belief that the entries in the accounts payable ledger under the open account involved were not deemed erroneous until petitioner's president discovered that petitioner would benefit taxwise if the credit balances in that account were considered as paid-in surplus and, therefore, as equity invested capital under the Internal Revenue Code. It will be noted that the letter of April 18, 1942, does not mention any error then existing in the books with respect to carrying the open account involved in the accounts payable ledger. Petitioner's president stated in his letter of April 18, 1942, that "it is my desire   *   *   * to transfer $112,000.00 of the above amount from my account and credit paid-in surplus." That quotation indicates to us only a present intention as of that date to make the credit balances in the account involved paid-in surplus.

We think our conclusion is strengthened by the fact that the record leaves unanswered the question, What was the nature of the withdrawals which Johnson made from the open account? If they were from surplus, as petitioner contends, they must have been dividends. If they were dividends, they should have been declared by petitioner's directors. See Delaware Corporation Law Annotated, 1947, sec. 34. But we do not have before us any resolution of its board of directors

authorizing the declaration of dividends. If the withdrawals were dividends, then Johnson should have reported them as income in his tax returns. His individual returns were not placed in evidence, so we are unable to ascertain how he treated the withdrawals. The failure of such proof leads us to believe that prior to April 18, 1942, Johnson considered the advances he made to petitioner as loans and that the withdrawals which he made were repayments thereof. The argument that no interest was paid is of little moment, for the loans may have been interest-free.

In view of the above, we are of opinion that petitioner has failed in its burden of proving that the credit balances in the open account in question were not loans from its principal stockholder and president prior to April 18, 1942. It follows that respondent must be sustained both as to the deficiency determined in the notice of deficiency and as to the additional deficiency requested in his amended answer.

*Decision will be entered under Rule 50.*